AFFIDAVIT OF SPECIAL AGENT JEFFREY E. WOOD

1.  I am a Special Agent of the United States Federal Bureau of Investigation ("FBI").  I joined the FBI in 1999.  From August 2002 through November 2007, and again from June 2009 through the present, I was assigned to the FBI's North Shore Gang Task Force (the "FBI Gang Task Force"), which consists of FBI Special Agents, Lynn Police Department Detectives, Massachusetts State Troopers, and Essex County Deputy Sheriffs.  From April 2004 through November 2007 and again from June 2009 through the present, I have been the coordinator of the FBI Gang Task Force.  From December 2007 through March 2008, I served at the FBI's Legat Office in Kabul, Afghanistan.  From March 2008 through May 2009, I was assigned to the Safe Street Gang Unit and the National Gang Targeting, Enforcement and Coordination Center at FBI Headquarters in Washington, D.C.  Although I have experience investigating a wide variety of suspected criminal activity including bank robberies, armored car robberies, and kidnappings, I have primarily focused on investigating drug and firearm-related crimes.  I have been the affiant on numerous affidavits in support of criminal complaints and other applications and have spent much of the last nine and a half years investigating gangs and gang-related activity in and around the cities of Lawrence, Lowell, Lynn, Haverhill, and Chelsea, Massachusetts.

2.   I have received training in drug, firearms, and gang-based investigations, including the following: 17 weeks of basic training at the FBI Academy in Quantico, Virginia, which included approximately three weeks of training related to organized crime and drug investigations and additional training related to firearms crime; specialized training on violent crimes and criminal organizations; training on local drug trafficking techniques and gangs sponsored by local law enforcement agencies; and numerous hours of on the job training as a member and later coordinator of the FBI Gang Task Force. I also regularly teach courses at the FBI Academy and elsewhere on using sources in investigations and on violent crimes. I also regularly review information on drug trafficking and gang investigation trends reported by the DOJ El Paso Intelligence Center, the DOJ National Drug Intelligence Center, and FBI headquarters.

3.   I make this affidavit in support of a complaint charging that, on or about July 22, 2012, Sincere Lawson, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, ammunition, to wit: six rounds of .357 magnum ammunition, bearing head stamp "Federal 357 Magnum", in violation of 18 U.S.C. § 922(g)(1).

4.   The statements contained in this affidavit are based on my own investigation, my review of reports, and on information provided to me by other law enforcement officers.  This affidavit is submitted for the limited purpose of establishing probable cause to believe that Sincere Lawson violated 18 U.S.C. § 922(g)(1).  It therefore does not set forth all of the information that I and other law enforcement personnel have obtained during the course of this investigation.

5.   On July 22, 2012, the FBI Gang Task Force received reliable information that Brandon Payne, the leader of a Lynn, MA, street gang called "MOBB" ("Money Over Broke Bitches"), and several associates were planning a violent home invasion of a drug dealer to steal drugs and money.  The FBI Gang Task Force received reliable information that Payne was planning this home invasion because Lynn police officers had seized a half pound of marijuana from Payne on the previous day and Payne wanted to recoup the money he lost when the marijuana was seized.

6.   On the night of July 22, 2012, the FBI Gang Task Force received reliable information that Payne had decided on robbing an identified victim, whom the FBI Gang Task Force recognized as a known Lynn gang member and drug dealer.[1]  Officers saw Payne

---

[1] I know the identity of Victim One.  I am not including the name in this affidavit to protect Victim One's privacy.

and several other individuals, subsequently identified as Sincere Lawson, Khyron Jolley, James Finley, and David Rucker, meeting outside Payne's residence at 95 Woodman Street in Lynn. Agents surveilled the group as they left the area in two cars: Payne driving a 2011 white Chevrolet Sunset, Nevada Registration 898XFR (the "White Chevy"), with Lawson as passengers; and Finley driving a 1997 green Honda Accord, MA Registration 681MB2 (the "Green Honda"), with Jolley and Rucker as passengers.[2]

    7.    Surveillance officers saw the White Chevy driving on Adams Street in Lynn, and turn onto Ridgeway Street and travel slowly down the street. Surveillance officers know this area to be a high crime area and several of the officers on the scene had made arrests in this area for various offenses, including drug crimes. Officers saw the White Chevy pull over on Ridgeway Street near Mt. Pleasant Street. Lynn police officer Ross Panacopoulos saw that no one got out of the White Chevy and the car's interior dome light turned on and off twice.

    8.    Shortly thereafter, officers saw the Green Honda pull up near the White Chevy. Two men got out of the Green Honda and walked over to the White Chevy. Three men got out of the White Chevy and the five men stood together on the street for several

---

[2] The Green Honda was registered to Finley at 6 Breed Square, #1, Lynn, MA.

minutes. Officer Panacopoulos saw the men walk down Ridgeway Street and turn onto Brownville Avenue. Officer Panacopoulos recognized Payne in the group. Officer Panacopoulos saw that one of the men walking with Payne, subsequently identified as Rucker, was carrying what appeared to be a long-barreled firearm wrapped in a t-shirt.

9. Officer Panacopoulos saw the group of men stop at the corner of Brownville Avenue and Highland Avenue, and then saw the man subsequently identified as Rucker walk across the street out of view with the long-barreled firearm and then return immediately thereafter without the long-barreled firearm. The five men then returned to their cars and both cars departed the area. Based on information provided by a confidential informant (hereinafter "CI-1"), I believe that Finley obtained the long-barreled firearm (which was a shotgun) before returning to the Green Honda.[3] Based on reliable information obtained during the investigation, including information from CI-1, I also believe that Rucker had refused to go along with the home invasion and

---

[3] I know CI-1's identity and have interviewed CI-1, and spoken with other officers who have interviewed CI-1. CI-1 has a criminal record including drug and firearm charges, and is cooperating with respect to pending charges. I have not disclosed CI-1's identity herein because I believe exposure of the identity of CI-1 would put its safety and the safety of its family in jeopardy.

had therefore dumped the shotgun and subsequently left the group prior to the car stop referred to below.

10.   Based on the belief that a violent home invasion was imminent, and the sighting of the long-barreled firearm, the FBI Gang Task Force decided to conduct a felony car stop of both vehicles to interrupt the home invasion. The two vehicles were surveilled to Ingalls Street in Lynn. At this point, multiple marked and unmarked police vehicles had arrived and blocked the White Chevy and the Green Honda near the corner of Ingalls Street and Chatham Street. As officers were getting out of their respective cars, the White Chevy accelerated in reverse and crashed into one of the unmarked police cars. The White Chevy continued to ram into the police cars. Fearing for their safety, several officers fired shots at the White Chevy.

11.   Brandon Payne, the driver of the White Chevy, was hit. He was transported to Massachusetts General Hospital and died later the next morning. Lawson, Jolley, and Finley were arrested and charged with various offenses in state court. Officers saw firearms in plain view in both vehicles, and both vehicles were subsequently searched pursuant to state search warrants. A Smith & Wesson model 586-3, .357 caliber revolver, bearing serial #BFR2929 (the ".357 Magnum"), loaded with six rounds of .357 magnum ammunition bearing head stamp "Federal 357 Magnum" (the

had therefore dumped the shotgun and subsequently left the group prior to the car stop referred to below.

10. Based on the belief that a violent home invasion was imminent, and the sighting of the long-barreled firearm, the FBI Gang Task Force decided to conduct a felony car stop of both vehicles to interrupt the home invasion. The two vehicles were surveilled to Ingalls Street in Lynn. At this point, multiple marked and unmarked police vehicles had arrived and blocked the White Chevy and the Green Honda near the corner of Ingalls Street and Chatham Street. As officers were getting out of their respective cars, the White Chevy accelerated in reverse and crashed into one of the unmarked police cars. The White Chevy continued to ram into the police cars. Fearing for their safety, several officers fired shots at the White Chevy.

11. Brandon Payne, the driver of the White Chevy, was hit. He was transported to Massachusetts General Hospital and died later the next morning. Lawson, Jolley, and Finley were arrested and charged with various offenses in state court. Officers saw firearms in plain view in both vehicles, and both vehicles were subsequently searched pursuant to state search warrants. A Smith & Wesson model 586-3, .357 caliber revolver, bearing serial #BFR2929 (the ".357 Magnum"), loaded with six rounds of .357 magnum ammunition bearing head stamp "Federal 357 Magnum" (the

14. I have reviewed Sincere's criminal record and determined that, prior to July 22, 2012, he had one or more convictions for crimes punishable for a term exceeding one year, including a 2008 conviction in Newark, New Jersey, for felony possession of a handgun.

15. Based on the foregoing, I submit that there is probable cause to believe that, on or about July 22, 2012, Sincere Lawson, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, ammunition, to wit: six rounds of .357 magnum ammunition, bearing head stamp "Federal 357 Magnum", in violation of 18 U.S.C. § 922(g)(1).

_____
JEFFREY E. WOOD
Special Agent, FBI

Subscribed and sworn to
before me this 1st day
of August, 2012.

_____
THE HONORABLE MARIANNE B. BOWLER
United States Magistrate Judge